Dante Keeling,
    Petitioner,

vs.

Warden, Lebanon Correctional
Institution,
    Respondent.

Case No. 1:08cv231

(Barrett, J.; Black, M.J.)

## REPORT AND RECOMMENDATION

Petitioner, who is incarcerated at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 2). This matter is before the Court on respondent's motion to dismiss (Doc. 7), which is opposed by petitioner (Doc. 10).[1] Also pending before the Court for ruling is petitioner's motion "to hold case in abeyance" so that a "recently discovered constitutional issue can be fully and fairly presented to the State Courts" (Doc. 11); respondent opposes this motion, and petitioner has filed a reply to respondent's opposition memorandum (Docs. 12, 14).

### Procedural Background

On June 28, 2001, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) (Count 1); one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2) (Count 2); two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A) (Counts 3-4); and one count of

---

[1] By separate Order issued this date, respondent has been granted leave to file a sur-reply responding to a "new matter raised by petitioner" in his opposition memorandum. (*See* Doc. 13).

possession of cocaine in violation of Ohio Rev. Code § 2925.11(A) (Count 5). (Doc. 7, Ex. 1). Firearm specifications were attached to the aggravated robbery and felonious assault charges. (*Id.*).

Petitioner's counsel filed a pre-trial motion "to exclude identification testimony by witness," which was denied. (*Id.,* Exs. 3-4). On August 7, 2001, petitioner entered a guilty plea to the cocaine possession charge. (*Id.,* Ex. 5). After a jury trial on the remaining charges, petitioner was convicted of aggravated robbery with specifications, robbery and felonious assault with specifications as charged in Count 3 of the indictment; Count 4 of the indictment, with specifications, was dismissed. (*Id.,* Ex. 6).

On September 13, 2001, petitioner was sentenced to terms of imprisonment totaling 21 years as follows: ten years for aggravated robbery, followed by three years of actual incarceration on one of the firearm specifications attached to that charge; and a consecutive prison term of eight years for the felonious assault offense charged in Count 3. (*Id.,* Ex. 7).[2]

On the same date the sentence was imposed, petitioner's trial counsel filed a motion "for acquittal pursuant to Criminal Rule 29(C) or for a new trial pursuant to Criminal Rule 33(A)." (*Id.,* Ex. 13). Petitioner claimed in this motion:

1. The State failed to prove that the offenses were committed in Hamilton County, Ohio;

2. While Defendant was charged in the First Count of the indictment with Aggravated Robbery pursuant to R.C. § 2911.01(A)(1), this Court instructed the jury of the lesser included offense of Robbery pursuant to R.C. § 2911.02(A)(1); thus the jury's verdict of guilty of the lesser included offense constitutes a verdict of not guilty of the greater offense;

---

[2] Petitioner also was sentenced to terms of imprisonment, to be served concurrently with the other counts, of eight years for the robbery offense and six years for the cocaine possession offense. (Doc. 7, Ex. 7).

2

3. While Defendant was charged in the Second Count of the indictment with Robbery pursuant to R.C. § 2911.02(A)(2), this Court instructed the jury on the lesser (but not lesser included) offense of Robbery pursuant to R.C. § 2911.02(A)(3), an offense which Defendant had never been charged with, and the jury's verdict of guilty of the felony of the third degree constituted an acquittal of the felony of the second degree originally charged;

4. This Court's failure to instruct the jury as to the significance of the stipulation, specifically that they must accept the stipulated fact as true, and failure to instruct the jury on the factors to be considered in eyewitness identification, deprived Defendant of a fair trial.

(*Id.*).

On September 19, 2001, the trial court summarily denied petitioner's post-conviction motion for "new trial/acquittal." (*Id.*, Ex. 14)

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, claiming in three assignments of error that his trial counsel was ineffective; the jury's verdicts of guilt were against the manifest weight of the evidence; and the trial court erred in failing to suppress a witness's identification of petitioner from a photographic line-up. (*Id.*, Ex. 8). With the assistance of yet another attorney, petitioner filed a supplemental brief, adding claims challenging the sufficiency of evidence, the jury instructions "as to the elements of the robbery offenses and as to the significance of the stipulation entered into by the parties," and the sentence that was imposed. (*Id.*, Ex. 10).

On June 28, 2002, the Ohio Court of Appeals overruled all of petitioner's assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 12).

It appears from the present record that petitioner took no further action to challenge his convictions or sentence until nearly three years later, when on June 20, 2005, he filed a *pro se* motion with the Hamilton County Common Pleas Court "for reconsideration of sentence pursuant to Crim. R. 32.1 and or motion for post-conviction relief pursuant to new constitutional ruling" in *Blakely v. Washington*, 542 U.S. 296 (2004). (*Id.*, Ex. 15). In the motion, petitioner expressly referred to

3

the Ohio Court of Appeals' affirmance of his conviction on direct appeal. (*See id.*, p. 3).[3] Petitioner stated that he "was unable to proceed further with his case to the Ohio Supreme Court" because he had "no understanding of the law, and [lacked the] funds to retain counsel." (*Id.*).

In entries filed on June 23 and 27, 2005, the Common Pleas Court denied petitioner's motion for reconsideration of sentence "and/or motion for post-conviction relief;" the court determined that the motion was "not well taken because . . . *Blakely* is not to be applied retroactively to cases on collateral review." (*Id.*, Exs. 17, 18). Apparently, petitioner did not seek appellate review of these decisions. (*See id.*, Brief, p. 8).

Next, on June 26, 2006, petitioner filed a *pro se* motion to correct unlawful sentence with the Hamilton County Common Pleas Court. (*Id.*, Ex. 19). Petitioner claimed that his sentence was unconstitutional and "is void" under *Blakely* in light of the Supreme Court of Ohio's February 2006 decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006). (*Id.*). On June 30, 2006, the Common Pleas Court summarily denied the motion. (*Id.*, Ex. 20).

Petitioner appealed to the Ohio Court of Appeals, First Appellate District, alleging as the sole assignment of error that the trial court "erred as a matter of law in refusing to correct the unlawful sentence imposed upon Appellant in violation of the Sixth and Fourteenth Amendments." (*Id.*, Ex. 21). On June 13, 2007, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (*Id.*, Ex. 23).

Petitioner sought leave to appeal further to the Supreme Court of Ohio. (*See id.*, Ex. 24). On October 24, 2007, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 25).

---

[3] Petitioner erroneously stated that the Ohio Court of Appeals' decision was rendered on March 22, 2002 and was 11 pages long. (*See* Doc. 7, Ex. 15, p. 3). Despite the discrepancies in dates and the length of the opinion, the undersigned is certain that petitioner was referring to the court's June 28, 2002 decision on direct appeal, which was properly referred to by petitioner in the motion for reconsideration and/or motion for post-conviction relief as Appeal No. C-010610 and as addressing the seven assignments of error set forth in petitioner's supplemental brief filed on direct appeal. (*See id.*).

Over four months later, on March 6, 2008, petitioner next filed a *pro se* motion for leave to file a delayed appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' June 28, 2002 direct appeal decision. (*Id.,* Ex. 26). Petitioner averred as "cause" for his delay in filing that "my appeal attorney failed to notify me of [the direct appeal] decision and by the time I had discovered that a decision had been made, it was well past the 45 day period for filing the notice of appeal." (*Id.*). Petitioner claimed that he had only recently discovered that he could file a delayed appeal when talking "a couple of days ago" to one of the "legal clerks" at the prison library. (*Id.*). Petitioner also stated that if granted leave to appeal, he would raise the following claims as propositions of law:

> 1. Appellant was denied the right to a fair trial under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and Sections [T]en and Sixteen, Article I of the Ohio Constitution, by ineffective assistance of trial counsel.

> 2. Ineffective assistance of appellate counsel.

> 3. The trial court committed substantial and prejudicial error by failing to suppress the identification of [petitioner] by photograph line-up.

> 4. Where a sentence in a criminal case is enhanced beyond the statutory maximum based upon facts not alleged in the charging instrument, proven beyond a reasonable doubt to a jury thereby lowering the prosecution's burden of proof, creates a structural defect in due process violating the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, and Article I Sec. 10 of the Ohio Constitution, creating a jurisdictional defect that may be raised in any court at any time.

(*Id.*).

On April 28, 2008, the Supreme Court of Ohio denied petitioner's motion for delayed appeal and dismissed the case without opinion. (*See id.,* Brief, p. 11 & Ex. 27).

Petitioner commenced the instant federal habeas corpus action while awaiting the state supreme court's ruling on his motion for delayed appeal. The petition was officially filed with this Court on April 1, 2008. (*See* Doc. 2). However, under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See, e.g., Jones v. Bertrand,* 171 F.3d 499, 502 (7th Cir. 1999); *Nichols v. Bowersox,* 172 F.3d 1068, 1077 (8th Cir. 1999); *Spotville v. Cain,* 149 F.3d 374, 376-77 (5th Cir. 1998); *Burns v. Morton,* 134 F.3d 109, 112-13 (3rd Cir. 1998); s*ee also In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997). Here, petitioner avers in the petition that he placed the petition in the prison mailing system on March 19, 2008. (Doc. 2, p. 15). Therefore, it is assumed that the petition was "filed" under the prison mail-box rule on March 19, 2008.

In the petition, petitioner asserts four grounds for relief:

**Ground One:** Ineffective assistance of appellate counsel and trial counsel.

**Supporting Facts:** Trial Counsel was ineffective when he refused to present an expert witness as to the single eyewitness to show that victims are often mistaken as to who did what and that eyewitness identification is notoriously inaccurate; Appellate counsel was ineffective for failing to provide [petitioner] with timely notice of the decision of the First District Court of Appeals so that he could timely appeal.

**Ground Two:** The trial court committed substantial and prejudicial error by failing to suppress the identification of [petitioner] by photograph line-up.

**Supporting Facts:** The photograph was specifically designed to be extremely prejudicial to [petitioner] by a 6 person line-up with only [petitioner] as the person with a defective eye leaving the witness with no other choice.

**Ground Three:** Sufficiency of the evidence/manifest weight of the evidence.

**Supporting Facts:** The only evidence presented to convict [petitioner] was the testimony of an intoxicated eyewitness that is insufficient to provide proof beyond a reasonable doubt as a matter of law.

**Ground Four:** Petitioner's sentence [is] void under the 5th, 6th & 14th Amendment[s] and in violation of due process right to notice of charges and opportunity to be heard as well as right to proof beyond a reasonable doubt by jury determination.

**Supporting Facts:** Where a sentence is enhanced beyond the statutory maximum based upon facts not alleged in the charging instrument, proven beyond a reasonable doubt to a jury thereby lowering the prosecution's burden of proof, creates a structural defect in due process violating the 5th, 6th & 14th Amendment[s] of the U.S. Constitution and Article I, Sec. 10 of the Ohio Constitution, creating a jurisdictional defect that may be raised in any court at any time.

(*Id.*, pp. 6-7, 9-10).

In response to the petition, respondent has filed a motion to dismiss. Respondent contends that the petition is barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. (Doc. 7). Petitioner opposes respondent's motion, and respondent has filed a "sur-reply" to petitioner's opposition memorandum. (Docs. 10, 13).

In addition, petitioner has filed a motion to hold the case in abeyance while he pursues relief in the state courts on a claim that the indictment was "fatally defective" based on a decision by the Supreme Court of Ohio on April 9, 2008–*State v. Colon*, 885 N.E.2d 917 (Ohio 2008) ("*Colon I*"); specifically, petitioner seeks to pursue a claim based on the state supreme court's holding in *Colon I* that a defective indictment which omitted the essential *mens rea* element

of a robbery offense under Ohio Rev. Code § 2911.02(A)(2) resulted in "structural error" that can be raised as an issue for the first time on appeal. (Doc. 11). Respondent opposes petitioner's motion for stay, and petitioner has filed a reply to respondent's opposition memorandum. (Docs. 12, 14).

# OPINION

## A. Petitioner's Motion For Stay (Doc. 11) Should Be Denied

An application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the equal obligation of the state courts to protect constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) *(per curiam); Picard v. Connor,* 404 U.S. 270, 275-76 (1971). The United States Supreme Court in *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999), held that to fulfill the exhaustion requirement "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review in the state's highest court, the Supreme Court of Ohio. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both

unexhausted claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

Since the enactment in 1996 of the Antiterrorism and Effective Death Penalty Act (AEDPA), which "preserved *Lundy*'s total exhaustion requirement," but also imposed a one-year statute of limitations on the filing of federal habeas petitions, *Rhines v. Weber,* 544 U.S. 269, 275 (2005), some federal courts (including the Sixth Circuit) have adopted a "stay-and-abeyance" procedure to ensure habeas review is not precluded in the class of cases where a timely-filed federal habeas petition is dismissed on exhaustion grounds and petitioner subsequently returns to federal court to present his claims in a renewed petition after exhausting his state remedies only to find that his claims are barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d 777, 778-81 (6th Cir. 2002).[4]

Recently, the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases, but that such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." *Rhines,* 544 U.S. at 276. The Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to

---

[4] This stay-and-abeyance approach was first suggested by Justice Stevens in a concurring opinion joined by Justice Souter in *Duncan v. Walker,* 533 U.S. 167 (2001). In *Duncan,* the Supreme Court held that a federal habeas corpus petition is not an "application for State post-conviction or other collateral review" that serves to toll the one-year limitations period under 28 U.S.C. § 2244(d)(2). In his concurring opinion, Justice Stevens indicated that the equitable powers of the federal court may be employed in such a situation to toll the statute of limitations for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." *Duncan,* 533 U.S. at 184. The justice suggested that the district court either stay the original habeas proceeding until petitioner exhausts his state court remedies or deem the limitations period tolled for the first habeas petition. *Id.* at 182-83.

potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77 (quoting *Lundy,* 455 U.S. at 520).

The Court went on to determine that:

Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .

For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78. However, on the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

It is petitioner's position that a stay of the instant action is appropriate because he is pursuing a claim for relief in the state courts based on the Supreme Court of Ohio's decision in *Colon I,* which was decided in April 2008, years after petitioner's conviction and sentence became "final" by the conclusion of direct review in 2002. Although petitioner has not alleged any claim based on *Colon I* as a ground for relief in his petition, he points out that in another analogous habeas case, the magistrate judge ordered the proceedings stayed despite this omission

because the petitioner could seek leave to amend the petition to add the "defective indictment" claim recognized in *Colon I*. (Doc. 14, attached opinion in *Cullins v. Brunsman,* No. 3:08cv26, 2008 WL 2704854 (S.D. Ohio July 7, 2008) (Merz, M.J.) (unpublished)).

In *Cullins*, the Court reasoned that a stay was appropriate because it appeared that petitioner's claim was "not plainly meritless under Ohio law," there was an available state court remedy to pursue, and petitioner had "good cause" for his delay given that *Colon I* had only recently been decided. *Id.* at *2. The Court reasoned further that although the petition did not contain any unexhausted claims because a claim based on *Colon I* had not been alleged as a ground for habeas relief, "Respondent does not assert that any attempt by Petitioner to amend to add his defective indictment claim would be barred by the statute of limitations or otherwise procedurally improper." *Id.*

The undersigned, however, is not persuaded by *Cullins* that a stay is warranted in this case. *Cullins* was decided before the Supreme Court of Ohio issued a second opinion on July 31, 2008 on the State's motion for reconsideration clarifying its decision in *Colon I*. *See State v. Colon,* 893 N.E.2d 169 (Ohio 2008) (*Colon II*). Specifically, the state supreme court expressly held in *Colon II* that its ruling in *Colon I* was prospective in nature and thus applicable only to cases pending on the date the decision was announced. *See id.* at 170.

Here, it is clear from the record that petitioner's case was not pending in the state courts when the *Colon I* decision was announced. Therefore, as respondent has pointed out in opposing petitioner's motion for stay (Doc. 12, p. 2), any claim that petitioner may seek to add based on *Colon* is "plainly meritless." In light of the Supreme Court of Ohio's clarification of *Colon I* in *Colon II,* it is now clear that *Colon I* is inapplicable to the case-at-hand and cannot be retroactively applied to petitioner's conviction and sentence which became "final" in 2002.[5]

---

[5] The Supreme Court has stated that "[s]tate convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely petition has been finally denied.'" *See Allen v. Moore,* Case No. 1:05cv731, 2007 WL 651248, at *4 n.1. (S.D. Ohio Feb. 23, 2007) (Barrett, J.) (unpublished) (quoting *Beard v. Banks,* 542 U.S. 406, 411 (2004) (in turn quoting *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994)).

Accordingly, in sum, the undersigned concludes that it would be an abuse of discretion under *Rhines* to grant a stay while petitioner pursues a futile claim based on *Colon* in the state courts. *See Rhines,* 544 U.S. at 277-78. Therefore, it is **RECOMMENDED** that petitioner's motion to hold the instant case "in abeyance" (Doc. 11) be **DENIED**.

## B. Respondent's Motion To Dismiss The Petition With Prejudice On Statute Of Limitations Grounds (Doc. 7) Should Be Granted

Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

As an initial matter, there can be no dispute that the ineffective assistance of trial counsel claim alleged in Ground One, as well as the claims alleged in Grounds Two and Three of the petition, accrued before petitioner's conviction became "final" for statute of limitations purposes by the conclusion of direct review or the expiration of time for seeking such review. Petitioner raised these claims on direct appeal and so is unable to contend that they accrued at a later time. Therefore, such claims are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which began to run on August 13, 2002, or one day after the 45-day period expired for filing a timely appeal to the state supreme court from the Ohio Court of Appeals' June 28, 2002 direct appeal decision. *See* Rule II, § 2(A)(1)(a), Rules of Practice of the Supreme Court of Ohio; *see also* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir.

2000).[6]

In contrast, a strong argument can be made that the factual predicate underlying the claim in Ground One of ineffective assistance by petitioner's appellate counsel may not have been discoverable in the exercise of due diligence before the conclusion of the direct review proceedings in August 2002. Nevertheless, even assuming that such claim accrued at a later time and is governed by 28 U.S.C. § 2244(d)(1)(D), it is clear from the record that petitioner was well aware of the factual predicate underlying the ineffective assistance of appellate counsel claim when he filed his *pro se* motion "for reconsideration of sentence . . . and[/]or motion for post-conviction relief" with the trial court on June 20, 2005. (*See* Doc. 7, Ex. 15, p. 3).[7] Therefore, under § 2244(d)(1)(D), the one-year statute of limitations would have begun to run at some point prior to June 20, 2005.

Finally, petitioner alleges in Ground Four of the petition that constitutional "structural error" occurred at sentencing under *Blakely* and its progeny, which can be raised at any time as a jurisdictional defect. (*See* Doc. 2, p. 10). Even assuming, as petitioner contends, that jurisdictional issues are always subject to review on the merits despite a statute of limitations or other procedural bar, the undersigned is not persuaded that such a claim has been presented here.

---

[6] Petitioner's unsuccessful motion for delayed appeal to the Supreme Court of Ohio did not restart the running of the statute of limitations under § 2244(d)(1)(A), although, if properly filed, it could serve to toll an unexpired limitations period during its pendency before the state courts. *See, e.g., Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001). The Supreme Court recently held that the *granting* of a delayed appeal motion restores the pendency of the direct appeal, thereby rendering the conviction non-final under § 2244(d)(1)(A). *See Jimenez v. Quarterman,* 129 S.Ct. 681, 686 (2009). In this case, however, petitioner's delayed appeal motion was denied; therefore, it could only be considered for tolling purposes under 28 U.S.C. § 2244(d)(2).

[7] Petitioner's ineffective assistance claim stems from counsel's failure to inform petitioner in a timely fashion of the Ohio Court of Appeals' direct appeal decision, which precluded him from filing a timely appeal to the Supreme Court of Ohio. (*See* Doc. 2, p. 6). Because petitioner knew that his conviction had been affirmed by the Ohio Court of Appeals, and also knew that he had not met the deadline for appealing further to the state supreme court when he filed his motion for reconsideration of sentence and/or motion for post-conviction relief with the trial court, he knew all the facts at that time which formed the basis of his ineffective assistance of appellate counsel claim.

Petitioner essentially posits that the sentencing court only possessed subject matter jurisdiction to impose minimum concurrent sentences, because the indictment failed to allege the additional essential elements required to be found by a jury beyond a reasonable doubt before any sentence in excess of the minimum term could be imposed. However, no court (including the Supreme Court in *Blakely* and its progeny) has held that the indictment must include not only the essential elements of the substantive criminal offenses charged against a defendant, but also any additional factual findings necessary for the imposition of a non-presumptive sentence falling within the permissible statutory range, which ultimately may or may not be determined post-conviction at sentencing after a pre-sentence investigation.

In any event, no jurisdictional concerns are triggered here, because petitioner was properly sentenced in September 2001 in accordance with the state statutory sentencing provisions then in effect.

It is conceded that by September 2001, the Supreme Court had decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was the forerunner of *Blakely* to the extent the Court recognized for the first time that the Sixth Amendment right to a jury trial attaches to a sentence which increases the penalty for a crime beyond the prescribed statutory maximum. *See id.* at 490. However, it was not until the Supreme Court decided *Blakely* in June 2004 that "the "statutory maximum" was defined to include "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 542 U.S. at 303. Moreover, it was not until the Supreme Court decided *United States v. Booker,* 543 U.S. 220 (2005), in January 2005, that *Blakely* was deemed applicable to mandatory sentencing provisions which were contained in the federal sentencing guidelines. Finally, it was not until the Supreme Court of Ohio decided *Foster* in February 2006, that it was determined that certain presumptive sentencing provisions contained in Ohio's sentencing statutes constituted a violation of Sixth Amendment principles enunciated in *Blakely*, as extended in *Booker*. *See Foster,*

14

845 N.E.2d at 487-88.[8]

Because the direct review proceedings in this case concluded in August 2002, years before the Supreme Court decided *Blakely* on June 24, 2004, followed by *Booker* on January 12, 2005, which in turn was followed by the Supreme Court of Ohio on February 27, 2006 in *Foster*, none of these decisions retroactively affected the jurisdiction of the trial court in sentencing petitioner in September 2001. *See, e.g., United States v. Saikaly,* 424 F.3d 514, 517 & n.1 (6th Cir. 2005) (and supporting cases from other circuits cited therein); *Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir.), *cert. denied,* 546 U.S. 885 (2005); *Spiridigliozzi v. United States,* 117 Fed.Appx. 385, 394 (6th Cir. Nov. 15, 2004) (not published in Federal Reporter); *see also Foster,* 845 N.E.2d at 499.

Moreover, even assuming these cases could be retroactively applied here, they did not erect a jurisdictional hurdle for sentencing courts. To remedy the constitutional infirmities found in Ohio's sentencing statutes, the *Foster* court adopted the approach used by the Supreme Court in *Booker* with respect to the federal sentencing guidelines, of severing the four *Blakely*-offending portions of Ohio's sentencing statutes and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See Foster,* 845 N.E.2d at 494-98. By excising the provisions that rendered Ohio's

---

[8] Specifically, in *Foster*, the state supreme court ruled that, despite the fact that "[m]ost Ohio appellate courts have determined that *Blakely* is inapplicable" to Ohio's sentencing statutes, portions of the statutes had been "eviserated by *Blakely*." *Foster,* 845 N.E.2d at 487-88. The *Foster* court found that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 490-94.

Recently, on January 14, 2009, the Supreme Court issued a decision upholding the constitutionality of a state sentencing statute which constrained the trial court's discretion by requiring it to find certain facts before imposing consecutive, rather than concurrent, sentences. *See Oregon v. Ice,* 129 S.Ct. 711 (2009). Although the *Foster* court held a similar provision in Ohio's sentencing statute was *Blakely*-offending, *see Ice,* 129 S.Ct. at 716 n.7, it now appears that in light of this recent Supreme Court precedent, no Sixth Amendment concerns are triggered with respect to consecutive sentencing decisions. *See Ice,* 129 S.Ct. at 717-20.

sentencing scheme mandatory and thus permitting the sentencing court broad discretion to impose a sentence within the applicable statutory range, the *Foster* court adopted a remedy that, as in *Booker*, 542 U.S. at 233, "encounters no Sixth Amendment shoal" and thus certainly no jurisdictional hurdle.

An additional argument can be made in petitioner's favor that the claim alleged in Ground Four of the petition accrued long after petitioner's conviction became "final" within the meaning of § 2244(d)(1)(A), because *Blakely*, *Booker* and *Foster* had not yet been decided; under this theory, either § 2244(d)(1)(C) or (D) arguably applies to delay the commencement of the limitations period in this case.

However, § 2244(d)(1)(D) cannot govern this ground for relief. It is clear from the record that petitioner was aware at the time of sentencing that the trial court was imposing non-presumptive, consecutive sentences. Therefore, the factual predicate underlying petitioner's claim was discoverable in the exercise of due diligence at the time petitioner was sentenced in September 2001.

Moreover, for the limitations provision set forth in § 2244(d)(1)(C) to apply, it must be established that the legal basis for the claim was "newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review." As discussed above, petitioner's conviction and sentence became "final" in August 2002, *before* the Supreme Court decided *Blakely* on June 24, 2004, which in turn was followed by *Booker* on January 12, 2005. It is well-settled in the Sixth Circuit that these precedents may not be applied retroactively to cases on collateral review, where as here the conviction previously had become final by the conclusion of direct review or the expiration of time for seeking such review.[9] *See, e.g., Saikaly,* 424 F.3d at 517 & n.1; *Humphress*, 398 F.3d at 860-63; *Spiridigliozzi,* 117 Fed.Appx. at 394; *see also Hanna v. Jeffreys,* No. 2:05cv727, 2006 WL 462357, at *6 (S.D. Ohio Feb. 22, 2006) (King, M.J.) (Report & Recommendation) (unpublished) (holding that "§ 2244(d)(1)(C) does not serve to delay the date the statute of limitations began to run as to petitioner's claim that his

---

[9] Petitioner also cannot rely on the Supreme Court's earlier decision in *Apprendi*, which as mentioned earlier, was the seminal case extended by the Supreme Court in *Blakely* and *Booker*. As respondent points out in the motion to dismiss (Doc. 7, Brief, pp. 19-20), *Apprendi*, which was decided in March 2000, did not announce a "newly recognized" constitutional right by the time petitioner was sentenced one and one-half years later in September 2001.

sentence violates *Blakely* ... because *Blakely* is not retroactively applicable to cases on collateral review"), *adopted,* 2006 WL 689060 (S.D. Ohio Mar. 26, 2006) (Graham, J.) (unpublished).

Petitioner also cannot rely upon *Foster* to delay the limitations period under § 2244(d)(1)(C), because *Foster* was not decided by the United States Supreme Court. In any event, as discussed above, the *Foster* court expressly stated that its decision extended only to cases still pending on direct review. *Foster,* 845 N.E.2d at 499. Because the appeal period expired in this case years before *Foster* was decided, petitioner is unable to prevail on any claim that *Foster* may be applied retroactively to his case.

For the foregoing reasons, the undersigned adopts the position espoused by respondent in the motion to dismiss (*see* Doc. 7, Brief, p. 22) that petitioner's claim for relief alleged in Ground Four of the petition is governed by the same limitations provision set forth in 28 U.S.C. § 2244(d)(1)(A) that has been found to apply to the ineffective assistance of trial counsel claim alleged in Ground One and to Grounds Two and Three of the petition.

As discussed above, under § 2244(d)(1)(A), the statute of limitations commenced running with respect to these claims on August 13, 2002, one day after the 45-day period expired in which to file an appeal to the state supreme court from the Ohio Court of Appeals' June 28, 2002 direct appeal decision. *See* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000). The statute expired one year later on August 13, 2003 unless statutory or equitable tolling principles apply to extend the limitations period.

With respect to petitioner's remaining ineffective assistance of appellate counsel claim alleged in Ground One of the petition, which the undersigned has assumed is governed by a separate limitations period set forth in 28 U.S.C. § 2244(d)(1)(D), the statute of limitations began to run, as discussed earlier, at the very latest on June 20, 2005 and expired one year later on June 20, 2006 unless statutory or equitable tolling provisions apply to extend that limitations period.

During these one-year limitations periods, petitioner was entitled to the benefits of the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or

other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998).

The tolling provision, however, does not "'revive' the limitations period (*i.e.,* restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259; *cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

Here, petitioner took no action to challenge his conviction or sentence in the state courts after the Ohio Court of Appeals affirmed his conviction on direct appeal in June 2002 until June 20, 2005, when he filed his *pro se* motion for reconsideration of sentence and/or motion for post-conviction relief with the trial court. By that time, the one-year statute of limitations governing the ineffective assistance of trial counsel claim alleged in Ground One, as well as the claims alleged in Grounds Two through Four of the petition, had long since expired. Therefore, those claims are not subject to statutory tolling under 28 U.S.C. § 2244(d)(2).[10]

---

[10] As noted earlier, *see supra* p. 12 n.6, petitioner's unsuccessful motion for delayed appeal to the state supreme court, which was filed in March 2008, did not restart the running of the statute of limitations; nor could it serve to toll the limitations period which had expired over four and one-half years earlier. *See, e.g., Searcy,* 246 F.3d at 518-19. Although the Supreme Court recently held that the *granting* of a delayed appeal motion restores the pendency of the direct appeal, thereby rendering the conviction non-final under § 2244(d)(1)(A), *see Jimenez,* 129 S.Ct. at 689, because petitioner's delayed appeal motion was denied, it could only serve to toll the running of an unexpired limitations period under § 2244(d)(2).

Moreover, with respect to petitioner's ineffective assistance of appellate counsel claim alleged in Ground One of the petition, the statute of limitations began to run at the very latest on June 28, 2005, one day after the final entry was filed by the trial court denying petitioner's motion for reconsideration of sentence and/or motion for post-conviction relief. (*See* Doc. 7, Ex. 18). The statute ran for 363 days until it was arguably tolled by petitioner's filing of his next *pro se* motion to correct unlawful sentence on June 26, 2006. (*See id.,* Ex. 19). The statute began to run again on October 25, 2007, one day after the appeal proceedings from the denial of the *pro se* motion concluded, and expired two days later on October 27, 2007. (*See id.,* Exs. 20, 21, 23-25). As noted above, *see supra* p. 18 n.10, petitioner's unsuccessful motion for leave to file a delayed appeal to the Supreme Court of Ohio, filed over four months later on March 6, 2008, could not serve to further toll the expired limitations period under § 2244(d)(2).

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied,* 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988). In *Pace v. DiGuglielmo,* 544 U.S. 408 (2005), the Supreme Court stated that a petitioner seeking equitable tolling generally bears the burden of establishing that (1) he has been pursuing his rights diligently; and (2) "some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)).

Before *Pace,* the Sixth Circuit required the court to consider the following factors in determining whether the statute of limitations governing federal habeas petitions should be equitably tolled:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews,* 851 F.2d at 151). The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)). The

absence of prejudice may only be considered when other factors of the test are met. *Id.*

In this case, petitioner is not entitled to equitable tolling. He has not demonstrated that some extraordinary circumstance prevented him from filing a timely federal habeas petition with this Court or that he is otherwise entitled to equitable tolling under *Dunlap*.

Petitioner contends in his memorandum in opposition to the motion to dismiss that he is entitled to equitable tolling because he was effectively prevented from filing a timely habeas petition by his appellate counsel, who misled him into believing that his appeal was still pending before the Ohio Court of Appeals. (*See* Doc. 10, p. 6). Petitioner avers that he was unaware of the progress of the appeal, which his counsel had informed him "would take several years," until he wrote the Hamilton County Clerk of Court in February 2008 "to see if he could obtain a copy of the [appellate] decision (because its attachment is a pre-requisite to filing a delayed appeal to the Ohio Supreme Court)." (*Id.*).

Petitioner's assertion is belied by the record. As discussed earlier, petitioner expressed his knowledge of the fact that his conviction had been affirmed by the Ohio Court of Appeals in 2002 and that he had not perfected a further appeal to the state supreme court in his motion for reconsideration of sentence and/or for post-conviction relief filed with the trial court in June 2005. (*See* Doc. 7, Ex. 15, p. 3).

Nor is equitable tolling justified to the extent petitioner contends that he lacked knowledge of the law and was unaware that he could file a motion for delayed appeal to the state supreme court until only a few days before doing so in March 2008. The petitioner's ignorance of the law does not constitute a sufficient ground for the equitable tolling of the statute of limitations in this case. *See Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991).

Accordingly, in sum, the undersigned concludes that the instant petition, deemed "filed" on March 19, 2008, is time-barred. The ineffective assistance of trial counsel claim alleged in Ground One of the petition, as well as the claims alleged in Grounds Two through Four of the petition, are time-barred under the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which commenced running on August 13, 2002 and expired on August 13, 2003. Moreover, the

ineffective assistance of appellate counsel claim alleged in Ground One of the petition is time-barred under the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(D), which commenced running at the very latest on June 28, 2005 and expired on October 27, 2007 after taking into consideration the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2). Equitable tolling is not warranted in this case.

Therefore, it is **RECOMMENDED** that respondent's motion to dismiss the petition with prejudice on the ground that it is barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d) (Doc. 7) be **GRANTED**.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's motion to hold the case in abeyance (Doc. 11) be **DENIED**.

2. Respondent's motion to dismiss (Doc. 7) be **GRANTED**, and petitioner's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DISMISSED** with prejudice on the ground that it is time-barred under 28 U.S.C. § 2244(d).

3. A certificate of appealability should not issue with respect to any Order adopting this Report and Recommendation to dismiss the petition on procedural statute of limitations grounds, because under the first prong of the applicable two-part standard established in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[11] *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an

---

[11] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in Grounds One through Four of the petition. *See Slack,* 529 U.S. at 484. However, it appears that petitioner has not stated a viable constitutional claim in Ground Four of the petition given that neither *Blakely* and its progeny nor *Foster* are retroactively applicable to the case-at-hand.

appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 2/12/09

cbc

Timothy S. Black
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Dante Keeling,
      Petitioner,

    vs                                    Case No. 1:08cv231
                                           (Barrett, J.; Black, M.J.)

Warden, Lebanon Correctional Institution,
      Respondent.

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).